Good morning, Your Honors, and may it please the Court, again, Harry Williams, this time for a poet, Nick Mangiaracina. Mr. Mangiaracina has stated a claim under the Sixth Amendment, and his allegations, again, were sufficiently specific. The District Court here recognized at least three plausible allegations, and here the case is even stronger that all nine legal mail allegations were clearly pled. So the Court should have recognized all nine of those legal openings. Nine legal openings is plainly a pattern or practice. That is much more than an isolated mistake. That is a recurring problem. And we know from the Eleventh Circuit, as well as common sense, that if you are a criminal defendant, facing, and your life for liberty is on the line, and nine times your attorney-client communications are interfered with, you've got a claim. So the first threshold issue, again, here, is whether opening mail outside his presence states a claim. This is a Sixth Amendment claim. This is time, it's a Sixth Amendment claim. And I think the claim here is even more strongly tied to Nordstrom, because Nordstrom was a Sixth Amendment claim. And also, it's very clear from the harm that Mangiaracina talked about in his complaint. He said that his attorneys were afraid to communicate with him. And he had a complicated case. He had six criminal cases and a federal case. There was a lot, you know, and this is in the allegations, there was a lot of paperwork going back and forth. And if there's a lot of paperwork going back and forth, and you have seven cases, and your attorneys are afraid to communicate with you through the mails, that's a violation of your right to counsel. That has to state a claim. That at least has to state a claim in terms of, again, we are at the screening stage here in this case, where we're just talking about allegations. And one thing that I... Again, Counselor, I want to clarify in this case, the allegations are only that things were opened, not read. Is that right? That is the allegation, because Mr. Mangiaracina doesn't know if they were read, because he doesn't know when and where they were opened and who saw them before they came to him opened or after he had mailed them where they went. So he doesn't know if they were read, so he can't, I guess, plausibly... He couldn't even plausibly allege that they were read, because it was out of his sight when they were opened. And again, I think a critical factor here... Although there might be other evidence that he could allege that indicated that something was read, something that has stains on it, or if the paper has been crumpled in a way that the envelope has not, might indicate that something had been opened and pulled out and therefore read. It is true, but I don't think that he would need to allege that. It may be that if this case goes forward and we see the mail and he amends the complaint to show that there was... Because there's a plausible allegation of reading. But at this point, he doesn't know. It may be that he deposes the guards who opened it and finds that they did read it. But he's got to get to some discovery before... And if we were to require a showing, if we were to require a plausible allegation that the mail had been read, we would be at risk of sort of over-screening, wouldn't we? Because the prisoners would never know that in many cases. I think that's true, unless the fingerprints were on the evidence. And that seems very contrary to the provable and plausible requirement of pleading, rather than actually requiring some sort of argument about speculation. And one thing that I'd like to talk about here, that we talk about in the briefs, but I think is really important, is why, especially in the Sixth Amendment context, the context is attorney-client communication. And what's happening, when attorneys are trying to communicate with clients that are far away, or perhaps that they just need to get documents to, and mail is being opened outside their presence, they're in this dilemma that I talk about in the brief. They either have to stop communicating with the client by mail, which in a complicated case that involves paperwork, would, as Mr. Mangiaricina alleges, really undermine the ability to provide a defense, or they have to just risk that there's going to be this breach of confidentiality. I live in Seattle. I'm a solo practitioner and parent. My client, Mr. Mangiaricina, is in Arizona. If the first letter I sent to him that says, hi, I've been appointed to your case, is opened, and he writes back and says, my mail is opened, I'm in a dilemma. Do I continue to communicate with him? Because it's hard for me to represent him. I can't go visit him. You know, we don't allow guards to sort of stand by the side of the room as attorney-client, as attorneys are speaking with their clients, or listening on the phone just in case maybe something might happen. We don't do that, and we shouldn't do that with mail either. And again, to go back to Judge Posner, you know, he says, like, look, this isn't great, right? Obviously, sometimes lawyers will conspire with prisoners to do something wrong, but the right is so important that we have to make this accommodation. We have to allow this attorney-client privilege to exist, because otherwise the Sixth Amendment is, in the words of my client, just shredded. And so I think it's very important that this, that allegations such as here, where there are allegations that nine pieces of mail over a period of a little over a year, I think, were opened, survives at least to the summary judgment stage where, you know, maybe it turns out that these aren't good claims. We don't know that, but certainly they are well alleged. They are provable and plausible. What do we do with the district court's concern that nine of your pieces of mail were not properly marked? Well, if you're, I mean, you've taken a very aggressive, and you've been very open about it stance here, that you're looking for sort of a strict liability rule on opening. And if so, if the mail's not, if the mail's not marked, how are we going to hold people liable for opening mail that they can't tell is open? Well, there are, there are at least three answers here, and I'd like to ask the indulgence of the court to kind of get through all three. So first, this is, this is an interesting test case, right? Because there are no letters that go to the Maricopa County Jail. They're only postcards, except for three instances, money orders, photos, and legal mail. So already they're on, the jail should be on alert if mail is coming in an envelope, because it's either to be rejected, or it's from a prisoner. What did you say the second thing was? Money orders, something else? Photos. Photos and legal mail, okay. And photos and money orders have specific requirements about what needs to be marked on the envelope. So it should be clear to them. Secondly... Well, it should be clear because if it's not marked as a money order, and it's not marked as a photo, then it automatically is legal mail? I mean, how, if people are sending... Well, well, so it could still be, but, but at any rate, we, we know if it says a lawyer's name on the, on the corner, and it doesn't say photos, and it doesn't say money orders, it's likely to be legal mail. But in, in addition... Does that include solicitations from, from lawyers who would be happy to take, take an appeal and, and are just, are just trolling for business? Yes, it does, because that's still attorney-client communication, and they don't get to, to open it. Now, if you were looking for damages later, and you said, hey, this solicitation letter, you know, was opened, the court might say, you know, that's, that, that... Does Maricopa follow other, other correctional institutions in requiring that the letter be marked legal mail? It does, and I, I... Okay, so the, and the district court said nine of these were not marked. He didn't allege that nine of these were marked as legal mail. He did allege that two were, but the other nine were not. Well, well, so, so my second response to that, so they've got this legal mail issue. My second response to that is, he said, all of my incoming and outgoing marked legal mail is being opened, and then he listed nine instances. And instead of the district court saying, oh, what he means by those nine instances are properly marked legal mail, the district court read it, I think, incredibly unnaturally and said, oh, those nine instances, he didn't, you know, he needed to say, in each instance, properly marked, instead of saying, here are the nine pieces of properly marked legal mail that came in. And we know that that's an unnatural reading because one of the pieces that the district court rejected had a grievance attached to it with the, with the complaint, and that grievance says, hey, this was properly marked legal mail. And so the district court rejected something that, in fact, in the grievance said it was properly marked legal mail. And I don't know, I don't want to get in trouble and cite extra record evidence, but, but in his opening brief that was filed before I was appointed, Medgar Ruchina submitted the envelopes. And if you look at docket 19-1 at page 42, for instance, you see what the letters look like. They are properly marked legal mail. I, you know, if that's inappropriate, that's inappropriate. I didn't put it in the brief because I wasn't sure. But it's very clear that if this got remanded and we looked at the evidence, it would at least state a claim. So it, he plausibly alleged those nine instances. And while you need to have factual specificity in your complaints, saying it's attorney client, properly marked attorney client mail should be sufficient. He shouldn't have to say, well, I talked to my attorney and based on attorney client communications, I know it was open. He shouldn't have to go, you know, there's a level of specificity and then there's a rabbit hole of requiring more and more finer and finer statements in order simply to state a claim. These cases, and, and I talk about this in the brief, there's the Packnett v. Wingo case. These cases are pretty easily and quickly decided on summary judgment because there's not much evidence and, you know, there's going to be a log, there's going to be some envelopes that, you know, there might be a little bit of testimony from judges, but to state a claim, all you have to do, I think, is say, hey, this is properly marked attorney client mail. It was opened up. It came to me opened. Well, you know, there's not much more you can allege because you don't know if it, who opened it because it was opened out. Let me ask you this. Suppose the evidence turns out that it was just, you know, a new mailroom employee who wasn't quite following the rules and just opened it up mistakenly. Nine times? Nine times. You know, it could happen. Mm-hmm. Plausible. Right. Is that a violation? Yes. I mean, you've got to train your employees. I mean, I don't see, especially over, you know, this happened over the course of months. If it were, again, you know, there was the case, name I forgot, there's a Northern District of California case where there were two openings in a single day, one of which was not actually attorney client mail, and the court dismissed that. I don't know if that was properly decided, but that's sort of the bad day theory. You know, there's no bad day theory when you have nine illegal, nine openings outside the presence of the prisoner. To state a 1983 claim, don't you have to have some intent? Well, you can't just have negligence. Well, you can't just have negligence, but I don't think... Negligence doesn't cut it. Negligence doesn't cut it, but nine is a pattern or practice. Nine says, hey, we're not just, like, making a mistake. We've got this thing, and this is only one person. So that means that there is one of two things happening. Either they don't like Mr. Mangiorecina and they're opening his mail on purpose, or the nine that he had opened probably signifies that they're opening other people's mail. So it's either a widespread problem, in which case, you know, it's a serious constitutional violation, or they're targeting him. And I'm almost out of time, but I'd like to quickly just point to S.E.R. 25. S.E.R. 25 talks about how the jail has an intelligence unit, and that when they want to interfere with attorney mail, they go and get a court order. Those things didn't happen here, and it specifically says on S.E.R. 25, hey, we don't have Mangiorecina down as a danger. So they've admitted in their briefing that this was, that these were errors, and they admit on S.E.R. 25 that he wasn't a target, that they weren't doing this, you know, because they were trying to prevent some sort of danger. And so, therefore, I think he states a claim. Thank you. Okay. Good morning, Your Honors. May it please the Court, my name is Kenneth Mangum. I represent the defendants. It's important to remember, as the Court has noted, that nowhere in the brief, nowhere in the complaints, the four complaints, is there any allegation of the mail having been read. This, coupled with the fact that the incidences are rare, and the lack of any substantial allegation of prejudice is sufficient to deny Mr. Mangiorecina the relief he requests. I think if him... You don't think there's a constitutional right to be present when your legal mail is open, unless you allege that it was read, as in Nordstrom. Privileged legal mail, circuit courts have said there is a right to be present. Supreme Court I don't think has gone that far, but the circuit courts have. But what's your position this morning? What should this circuit say? I think as there's constitutional right to have the mail opened and read in your presence, inspected, scanned, whatever terminology is appropriate to be used, and I think there's ambiguity there. I don't have a problem with that. But what's important is that several incidences of incidental, accidental, non bad motivational... How do we know that? We're just at the pleading stage. Well, we know that because there has been no censorship of the mail. There's been no interception and failure to deliver the mail. There's been no allegation that any of the mail contents were ever divulged to any person at all. If those were the situations, and that would bring us into the situation some of the circuit courts have said is required for a case to go forward. But how is an inmate to have the knowledge to plausibly allege reading in most of these cases? Because he communicates with his attorneys, and the attorneys would report to him incidences of that situation or a suspicion that there had been some untoward conduct. Well, I mean, you know, if your mail came to you unopened and with the pieces of scotch tape on it, I mean, I would think that somebody may have read my mail. You can suspect it, but you can't, that is not enough. How could I ever, you know, if you try to prove that and allege that, the jail personnel may read my mail and people, oh, it's just an inverted, it's just a mistake. Well, you can never prove it. We didn't read it. We just, you know, kind of just a new kid on the block here, a summer intern. Well, there's no reason to assume that the mail was read. It is not to be read. And there are all sorts of accidents and incidences in which it can be read, excuse me, it can be opened by mistake. The machine opening, placing a letter in the wrong stack where it gets slid open, and then it realized later that this is legal mail. And so we don't further open the contents and review them. If a single opening without proof of review by a jail personnel is insufficient to state a constitutional claim, is there a number in your mind that is sufficient? In other words, is there some number of openings without any allegation of reading that you believe would be enough to state a constitutional claim? I'm not sure. It's certainly more than three. My opening bid is a hundred. Would that be enough? That might be enough. How about ten? That might be enough also. We have nine here. I wouldn't go into single digits. We have a situation of harmless error, Your Honor. There are often mistakes that occur in trials and situations, and the court deems it as wrong, but it's harmless error. It's not sufficient to show any claim. Don't forget, Mr. Mangiaricina has had four complaints. He's had his opportunity to make all the allegations he wishes. And on the fourth complaint, the Third Amendment complaint, his case was dismissed. Only if the complaint was reviewed using the right standard, though, right? Yes. Yes. It is possible, Your Honor, that you have to be careful in distinguishing this case from Nordstrom because Nordstrom can be badly over-read. And Nordstrom conflicts with an earlier case of Stevenson v. Kosky, which was relied on by Judge Wake, in which the court didn't hold, but it very clearly emphasized that reading mail, legal mail, was not actionable. And the dissent pointed out that the majority says or suggests that legal mail be properly read by the prison guard. But prison rules clearly allow only for contraband inspection, and the search does not allow reading of the mail. There's a second aspect that Judge Bybee certainly knows about, the Williams v. Woodford case, in which the Nordstrom case slides over the issue of the allegation. If you'd excuse me a moment. Sure. The Williams case says, Williams fails to establish substantial prejudice. Williams does not argue, and the record does not show, that the prosecution used any confidential information obtained from the monitoring or interception to achieve an unfair advantage at trial. It goes on to say, Williams fails to make a substantial showing of the denial of a constitutional right due to the jail, the jailhouse monitoring and document interception. Now compare that, that obligation of substantial prejudice and an allegation of substantial prejudice with the Nordstrom case, which holds, the harm Nordstrom alleges is not that the tainted evidence was used against him, but that his right to confer privately with counsel has been chilled. This is a plausible consequence of the intentional reading of his confidential legal mail. In other words, for Nordstrom, it's plausible that there is injury in the Woodstrom case. There has to be an allegation of substantial prejudice. It's not improper for this court to limit the holding or the ruling in Nordstrom, as this court has said in Gonzales versus Arizona, what you'd want us to say that Nordstrom just deals with reading. Yes, that's it. Exactly. Can't go further. Can't go any further. This, this, this court has said that it is okay for a panel to limit a prior ruling and to revise a prior ruling where that prior ruling has not been cited by other courts. And my research shows that there has been no case, no circuit case in this country in which the Nordstrom case has been cited for the proposition that we're talking about here. Fairly recent case. 2014 year and a half. It's been cited by a district courts, but I think four circuit courts and only for tangential presidential precedent, procedural matters. It looks like some of the other circuits have gone much further than Nordstrom. Uh, I don't think so. Your honor, there are, uh, the, the following circuits allow incidences, several more than one of mail opening without there being an actionable complaint. The second circuit in Davis versus Gourd, the 10th circuit in Smith versus Moschner, the eighth circuit in Gardner versus Howard, the, um, third circuit in Jones versus Brown. Uh, there are other circuits that have held that a single incident of opening mail is not, uh, actionable. That's the ninth circuit in Stevenson versus Kosky. As I've said, uh, the sixth circuit in Renee versus Sewell 1992 case and the, um, fifth circuit in Walker versus Navarro County jail in 1993 case. Um, had those cases, those courts been, uh, faced with, uh, two or three incidences, I am confident they would have also held those to be non-actionable. Um, Mr. Mangi-Racina, uh, had at most mail opened, um, six months apart. This is not a pattern and practice. Um, also, um, irrespective of the citation to the record. Well, if you look at his 2013 allegations, those are pretty close together. Um, well, according to Judge Wake, they're November, uh, March and excuse me, March, November, and March. They're, uh, each about six months apart. In 2013? Yes. I've got, I've got January, January, January, February, and March. Um. Those are John Doe's 10 through 14. Well, Judge Wake cites three instances, Your Honor. So, uh, you may be talking about some non-privileged legal mail. Well, the three that he, the three that he allowed to go and said were isolated were the first three. That's John Doe's five through seven. That would be September, 2011. He had no date. Uh, March 23rd, 2012 and November 9th, 2012. Those are the three that Judge Wake said could plausibly go forward, but he just found them to be too isolated. Okay. The others that are alleged look to me to be much closer in time. Yes. And those are, are the items that are not properly shown to be marked or labeled as a privileged legal mail. Um, I think it is relevant, Your Honor, that, um, Mr. Mangio-Racina is an exceptionally dangerous, uh, inmate. Uh, 19 charges, uh, include the normal, um, aggravated assault, kidnapping and robbery, but they also include allegations of having a shank twice, a handcuff key once, uh, attempting to introduce contraband to the victim. Is all that in the complaint? Yes. Those are, those are in the, uh, complaints that. No, no. Excuse me. The complaints that are referred to in, how is that relevant? Those are the cases which he was in jail awaiting trial on. How is a district court to include facts like the ones you're describing in evaluating a constitutional civil complaint for sufficiency? Well, as to. Change that, does it change the burden of proof on the pleader? I think it does, Your Honor. Um, because it just points out the, uh, danger to, uh, the jail system and to the court system, uh, from these kinds of inmates. The danger of what? Of bringing him down to open the mail in his presence or the danger of him receiving mail? But I don't understand the connection. Well, the danger of trivializing these, um, violations and, uh, turning them into constitutional, uh, violations as opposed to something else. Right. But the allegation is that you're interfering with his, with his right to, to, um, talk to his counsel. How does the fact that he's accused of having a shank in prison affect the right to talk to his counsel? It doesn't affect the right. I'm sorry if I implied that, Your Honor. It, uh, it just shows that the jail has, um, an important, uh, consideration of, uh, uh, ensuring checking the mail. Um, might be a shank in that mail. Uh, plastic shank perhaps, Your Honor. By viewing it? Uh, the contraband. Take an envelope and you know. Well, the, the, the physical object is much less, uh, methamphetamine, uh, heroin and so forth. Um, is a certain. All of those are good reasons for opening his mail. But if you're going to open his legal mail, you're supposed to do it in his presence. And the allegation is you're not doing this. You're not calling me down there. You're just sending me this stuff. You're just, and it's been opened and I don't know what you've been doing with it. If his lawyer is sending him a small enough amount of heroin in the mail that you can't even feel it. Don't we have bigger problems? I mean, isn't this, this is, this is not the way we're going to address that issue, is it? Well, that's a, it's a, it's a serious issue. And if the court has followed the Nordstrom, uh, uh, cases, Judge Campbell took it back. Um, he cites, uh, three instances of, uh, lawyers who are involved in contraband and a fourth person, a mitigation specialist that was involved in, uh, contraband and, uh, uh, improper. Opening the mail, but we've never, we've never, uh, ameliorated or diminished the right, uh, not to have your legal mail open for these kinds of considerations that you're discussing, have we? No, no, your honor. I, it, it doesn't change the, um, uh, the importance of opening mail in the pre opening privileged legal mail in the presence of the inmate, but it does point out the serious problem that the jails have and the fact that we should not hold a strict liability standard for incidental, uh, non, um, frequent, uh, opening, slitting open of the envelope. There's no reason to believe that just because the envelope was slid open, that the, uh, letter was retrieved and the letter was read as indicated. There's no allegation of censorship, no allegation of the mail, not being delivered, no allegation of any information from the mail ever being used, uh, and reported to anyone. Um, no allegation of, uh, staining or crumpling of the mail to indicate any kind of opening. We think that the context of the situation is important as, um, pointed out by the case, um, of Burns versus Swenson and eighth circuit case that about the context of the case is always important in deciding, uh, the ruling to be held. Um, the Guajardo case, the Martin, uh, Martinson case, uh, by judge Posner is important because he also points out the danger of criminal lawyers being Confederates with their, um, inmates. And, uh, the fact that in his case, nine instances of legal mail, albeit non-privileged legal mail, but nine instances of legal mail being opened did not constitute the basis for action going forward. So your honors, um, because of the fact that, uh, there have been four attempts by Mr. Manjiracina to, uh, state his claim unsuccessfully, his failure of specific information of any substantial, uh, actual prejudice and the fact that this has been so rare are reasons to all support Judge Wake's decision. Thank you very much. Thank you counsel. I think you had a minute for rebuttal. Minute plus. I just have a couple of points. Um, I would, uh, like to direct the court's attention to SCR 28. That was one of the allegations that was not credited by the district court, but the, the grievance response from the jail calls it legal mail. So again, I think that the nine are, um, adequately alleged. Uh, I'd also like to point out at SCR 26 that, uh, Manjiracina alleges that a guard told him that there was no law against opening mail outside his presence. And they did that only as a courtesy. I think that's important. Um, I'd like to point out that, um, that there is prejudice here because he had difficulty communicating with his attorneys and that communication was chilled. Um, and then finally, just to refer briefly to, to Judge Posner's opinion. Again, I think it's, there's many, there are many interesting things said in there, but what he says about dangerousness is that the way that you balance, he says accommodate rather than balance the danger here and the important right to receive mail and, and, uh, is to have that mail opened in the presence of the prisoner. Um, so I think that this case should be reversed and remanded. Thank you, your honors. Thank you. Thank you. Um, thank you very much. And we appreciate your willingness to help out the court. Matter is submitted.
judges: Paez, Bybee, Tigar